IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FORD MOTOR COMPANY,                    §
                                       §
            Plaintiff,                 §
                                       §
V.                                     §          No. 3:17-mc-4-L-BN
                                       §
VERSATA SOFTWARE, INC. f/k/a           §
Trilogy Software, Inc.; TRILOGY        §
DEVELOPMENT GROUP, INC.; and           §
TRILOGY, INC.,                         §
                                       §
            Defendants.                §

## MEMORANDUM OPINION AND ORDER

Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc. and Trilogy, Inc. (collectively, "Versata"), defendants in *Ford Motor Company v. Versata Software, Inc.*, No. 15-10628-MFL-EAS (E.D. Mich.) (the "Michigan case"), have filed a Motion for Protective Order and to Quash Ford Motor Company's Subpoena to Third Party McKool Smith to Produce Documents, *see* Dkt. No. 1 (the "MPO"), served in connection with the Michigan case (the "Subpoena").

United States District Judge Sam A. Lindsay has referred the MPO to the undersigned United States magistrate judge for hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 3.

Ford filed a response, *see* Dkt. No. 9; Versata filed a reply, *see* Dkt. No. 18; and the Court heard oral argument on the MPO on March 6, 2017, *see* Dkt. No. 25.

For the reasons and to the extent explained below, the Court GRANTS in part

and DENIES in part Versata's Motion for Protective Order and to Quash Ford Motor Company's Subpoena to Third Party McKool Smith to Produce Documents [Dkt. No. 1].

## Background

The Subpoena requires compliance to produce documents at the offices of U. S. Legal Support in Dallas, Texas on January 27, 2017. *See* Dkt. No. 1-1. Versata properly filed its MPO in this Court, which, as required by Rule 45(d)(3), is the court in the district where compliance with the Subpoena is required. *See* FED. R. CIV. P. 45(d)(3)(A).

According to the MPO,

> [o]n January 4, 2016, Ford served a subpoena duces tecum on McKool Smith, PC, a Dallas-based law firm that previously represented Versata in a 2006 lawsuit between Versata and Sun Microsystems ["Sun"]. *See Versata Software, Inc. v. Sun Microsystems, Inc.*, No. 2:06-cv-00358-TJW (E.D. Tex. filed Sept. 11, 2006) [the "Sun Litigation"].

Dkt. No. 1 at 2-3 (footnote omitted). Specifically, the Subpoena includes the following document requests:

> 1.    All Versata documents produced in the matter *Versata Software, Inc. et al v. Sun Microsystems, Inc.* (2-06-cv-00358). This includes, without limitation, all Versata documents entered as trial exhibits and identified in Attachment B.
> 2.    Versata expert reports produced in the matter *Versata Software, Inc. et al v. Sun Microsystems, Inc.* (2-06-cv-00358). To the extent that the Versata expert reports include Sun Microsystems confidential information, such confidential information should be redacted.
> 3.    All deposition testimony, including associated exhibits, of Versata witnesses given during the matter *Versata Software, Inc. et al v. Sun Microsystems, Inc.* (2-06-cv-00358). Such deposition testimony includes, without limitation, the following Versata witnesses:

      a.      Ajay Agarwal
      b.      Jeff Bobick
      c.      Tom Carter
      d.      David Franke
      e.      Lance Jones
      f.      John Lynch
      g.      Joseph Liemandt
      h.      Chris Porch
      i.      Christopher Bakewell
      j.      Scott Cole
      k.      Neeraj Gupta
      l.      Tom Wilbur

Dkt. No. 2 at 6-7 of 114.

Versata argues that

[t]he [Sun Litigation] is totally irrelevant to the Michigan case. There are no overlapping issues, aside from the fact that some of the witnesses in the Michigan case also testified in the [Sun Litigation]. Ford's subpoena therefore goes far beyond the bounds of legitimate discovery permitted by the Federal Rules of Civil Procedure.

Dkt. No. 1 at 2-3 (footnote omitted). Versata contends that "Ford seeks to conduct a fishing expedition into Versata's litigation history without any showing of relevance," where "[b]oth Ford and Versata have been involved in significant litigation," and that, "[i]f parties were permitted to subpoena documents from unrelated lawsuits, discovery in this case would quickly spin out of control." *Id.* at 3. According to Versata, "[w]ith important trial deadlines coming up in the case, the Michigan Court and the parties cannot afford this distraction and waste of resources." *Id.*

Versata further asserts that "[t]he categories in Ford's subpoena also would require McKool Smith to produce confidential information that belongs to Sun" and that "[t]his would violate the federal court protective order entered in the [Sun

Litigation]." *Id.* Versata argues that "McKool Smith cannot be expected to comply with Ford's subpoena under these circumstances and should not have to incur the burden and expense of negotiating with Sun over what must be redacted." *Id.*

According to Versata, "Ford's subpoena is a recipe for mutually-assured destruction," and, "[i]f Ford is entitled to subpoena materials from the [Sun Litigation], Versata is equally entitled to subpoena materials from Ford's past litigations," which "would make the case unmanageable." *Id.*

Versata requests that the Court "quash Ford's subpoena to McKool Smith and enter a protective order prohibiting production of documents from the [Sun Litigation] to Ford" and order that McKool Smith, PC is relieved of any obligation to produce documents in response to the Subpoena. *Id.* at 10; Dkt. No. 1-2.

Ford responds that

Versata contends that the discovery sought in Ford's subpoena is "totally irrelevant" to the case pending in Michigan between Ford and Versata (the "[Michigan case]"). (Motion at 1.) As explained below, however, Ford's subpoena is narrowly tailored to Versata documents that are relevant to multiple claims in the [Michigan case]: trade secrets, invalidity, inequitable conduct, damages and others. The Special Master in the [Michigan case] has already determined that information Ford is seeking is relevant to Ford's claims, despite Versata's self-serving assertions to the contrary. [The parties stipulated to the Court's appointment of Larry Graham as a "Special Master" to handle all discovery disputes between the parties.]

Versata also contends that compliance with the subpoena would "require McKool Smith to produce confidential information that belongs to Sun." (Motion at 1.) Ford does not seek Sun documents. Regardless, Sun has confirmed that it does not object to production of Sun information that may be included in the Versata documents (e.g., Versata expert reports and deposition transcripts) so long as the production is designated "Confidential – Attorney Eyes Only" pursuant to the Protective Order entered in the [Michigan case]. Ford has no objection to

Sun's request.

McKool Smith has confirmed that it possesses responsive documents. Versata's motion to quash thus boils down to a relevancy dispute that only Versata has raised. McKool Smith (to whom the subpoena is directed) has not raised any relevancy objection. The only objection McKool Smith raised was the presence of Sun information in some of the requested documents. But that objection is resolved with Sun's approval described above. Versata's motion should be denied.

Dkt. No. 9 at 1-2 & n.1 (footnote omitted).

Ford reports that, "[o]n September 30, 2016, Ford served Document Request Nos. 106-109 on Versata seeking documents in Versata's possession, custody or control concerning the Sun Litigation"; that "Versata objected to Ford's document requests with boilerplate objections and refused to produce responsive documents"; and that, "[w]hen Ford and Versata held a telephonic meet and confer to discuss Ford Document Request Nos. 106-109, Versata indicated that it no longer possessed responsive documents." *Id.* at 2. Accordingly, "[o]n January 4, 2017, Ford served a document subpoena on McKool Smith, Versata's counsel in the Sun Litigation," which "subpoena seeks production of: (1) Versata's document production from the [Sun Litigation]; (2) Versata's technical and damages expert reports from the Sun Litigation; and (3) deposition transcripts for Versata witnesses" but "did not seek Sun documents." *Id.*

According to Ford, "[d]uring a telephone call on January 16, 2017, McKool Smith attorney Michael Fritz informed Ford that McKool Smith currently possesses: (1) Versata's expert reports from the Sun Litigation, and (2) Versata deposition transcripts for Versata witnesses" but that McKool Smith no longer possesses Versata's document production or trial exhibits from the Sun Litigation. *Id.* at 2-3. Ford reports that, "[o]n

January 18, 2017, McKool Smith served objections to Ford's subpoena" and that

"McKool Smith's responses did not include a relevancy objection" but rather "focused

on the fact that the responsive documents in its possession were subject to the

Protective Order entered in the Sun Litigation." *Id.* at 3.

"Ford respectfully requests that the Court deny Versata's motion to quash, and

permit McKool Smith to produce the responsive documents in its possession pursuant

to the Protective Order entered in the Michigan Litigation." *Id.* at 11.

Versata replies that

> Ford makes a desperate effort to argue relevance for deposition
> transcripts and expert reports from a decade old case unrelated to the
> pending case in Michigan. But there is no relevance. First, with respect
> to the SalesBuilder software – which Ford contends is a prior art system
> relevant to some of the patents asserted in the Michigan case – Versata
> has already produced hundreds of relevant documents and responded to
> Ford's interrogatories. There is nothing more that Ford can glean from
> deposition transcripts and expert reports from the [Sun Litigation]
> relevant to Ford's SalesBuilder based invalidity claims.
>
> Second, Ford argues that it needs the Sun materials for its
> damages case, but fails to explain a rational damages theory that would
> requires those documents. Likewise, Ford's argument that it needs
> deposition testimony about Versata's internal documents from 2002
> discussing other Versata customers to establish the nature [of] Ford's
> business relationship with Versata is simply illogical.
>
> Ford's relevance arguments fail because transcripts from a decade
> old litigation involving entirely different patents/trade secrets and
> different products from different industries can hardly be relevant. The
> only common element here are a handful of Versata witnesses that Ford
> intends to harass with prior testimony on entirely unrelated issues.
> Allowing Ford this discovery will lead to further discovery disputes,
> requiring the parties to waste each other's time and resources on
> irrelevant sideshows – time and resources that the parties cannot afford
> to waste with important trial deadlines coming up in the case.
>
> Ford's subpoena is nothing short of a fishing expedition and goes
> far beyond the bounds of legitimate discovery permitted by the Federal
> Rules of Civil Procedure. Moreover, it requires McKool Smith to violate

a protective order entered in the [Sun Litigation] and produce confidential information that is unrelated and irrelevant to the issues in the Michigan case. For these reasons, Ford's subpoena should be quashed.

Dkt. No. 18 at 1-2 (emphasis removed).

"Versata respectfully requests that the Court quash Ford's subpoena to McKool Smith and enter a protective order prohibiting production of documents from the Sun litigation to Ford" but that, "[t]o the extent the Court is inclined to grant discovery to Ford, it should be limited to only those materials that reference SalesBuilder – the only issue that has been ruled relevant in any way by the Michigan court." *Id.* at 9.

## Legal Standards

I.   <u>Motion to modify subpoena</u>

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena commanding a nonparty "to whom it is directed to ... produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." FED. R. CIV. P. 45(a)(1)(A)(iii).

"Federal Rule of Civil Procedure 45 'explicitly contemplates the use of subpoenas in relation to non-parties' and governs subpoenas served on a third party, such as [McKool Smith, PC], as well as motions to quash or modify or to compel compliance with such a subpoena." *Am. Fed'n of Musicians of the U.S. & Canada v. SKODAM Films, LLC*, 313 F.R.D. 39, 42 (N.D. Tex. 2015) (quoting *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009)).

Under Rule 45, "[a] subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of

where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(2)(A); *see also* FED. R. CIV. P. 45(a)(1)(C) ("A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises ... may be set out in a separate subpoena.").

Rule 45(d)(1) mandates that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and that "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." FED. R. CIV. P. 45(d)(1). Further, Rule 34 provides that a document request "must describe with reasonable particularity each item or category of items to be inspected" or produced, FED. R. CIV. P. 34(b)(1)(A), and, although Rule 34 governs document discovery from a party and not a non-party, *see* FED. R. CIV. P. 34(c), this reasonable particularity requirement should apply with no less force to a subpoena's document requests to a non-party, *see generally Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

Rule 45(d)(2)(B) requires that "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested" – and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is

served." FED. R. CIV. P. 45(d)(2)(B).

"If an objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection. (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." FED. R. CIV. P. 45(d)(2)(B).

Timely serving written objections therefore suspends the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order. *See* FED. R. CIV. P. 45(d)(2)(B)(ii); *Am. Fed'n*, 313 F.R.D. at 44. On the other hand, "[t]he failure to serve written objections to a subpoena within the time specified by Rule [45(d)(2)(B)] typically constitutes a waiver of such objections, as does failing to file a timely motion to quash." *Am. Fed'n*, 313 F.R.D. at 43 (internal quotation marks omitted).

And "a non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate [or unsupported] objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." *Id.* at 46 (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2004), and adopting "the explanations in *Heller* of what is required to make proper objections and how to properly respond to discovery requests"). Just as, "[a]lthough [Federal Rule of Civil Procedure] 34 governs document discovery from a party and not a non-party, *see*

FED. R. CIV. P. 34(c)," "Rule 34(b)(1)'s reasonable particularity requirement should apply with no less force to a subpoena's document requests to a non-party," so too "a non-party's Rule 45(d)(2)(B) objections to those requests should be subject to the same requirements facing a party objecting to discovery under Rule 34." *Am. Fed'n*, 313 F.R.D. at 44, 46.

This means that a non-party is subject to the requirements that an objection to a document request must, for each item or category, state with specificity the grounds for objecting to the request, including the reasons, and must state whether any responsive materials are being withheld on the basis of that objection; that an objection to part of a request must specify the part and permit inspection of the rest; that "general or so-called boilerplate or unsupported objections are improper under Rule 45(d)(2)(B)"; and that the explanations in *Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014), of what is required to make proper objections and how to properly respond to discovery requests apply equally to non-parties subject to a Rule 45 subpoena. *See Am. Fed'n*, 313 F.R.D. at 46; FED. R. CIV. P. 34(b)(2)(B)-(C).

The target of a Rule 45 subpoena can also file a motion to quash or modify the subpoena. Under Federal Rule of Civil Procedure 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A). The moving party has the

burden of proof. *See Wiwa*, 392 F.3d at 818; *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998). "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

On a motion asserting undue burden, "[t]he moving party has the burden of proof to demonstrate 'that compliance with the subpoena would be unreasonable and oppressive.'" *Wiwa*, 392 F.3d at 818 (quoting *Williams*, 178 F.R.D. at 109 (internal quotation marks omitted)). The moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See S.E.C. v. Brady*, 238 F.R.D. 429, 437-38 (N.D. Tex. 2006); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005). "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818 (internal quotation marks and footnote omitted). "To determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* (footnote omitted). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* (footnote omitted).

"When a subpoena is issued as a discovery device, relevance for purposes of the

undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *Williams*, 178 F.R.D. at 110. Rule 26(b)(1) has been amended, effective December 1, 2015, to provide that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The Court also "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818 (footnote omitted). Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests "seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date"; "[t]he requests are not particularized"; and "[t]he period covered by the requests is unlimited." *In re O'Hare*, Misc. A. No. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012); *accord Turnbow v. Life Ptrs., Inc.*, No. 3:11-cv-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013).

Additionally, Rule 45(d)(3)(B) provides that, "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on

motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." FED. R. CIV. P. 45(d)(3)(B)(1). But "the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." FED. R. CIV. P. 45(d)(3)(C).

A party, although not in possession or control of the materials sought in a subpoena and not the person to whom the subpoena is directed, has standing to file a motion to quash or modify under Federal Rule of Civil Procedure 45(d)(3) if he has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. *See Ass'n of Am. Physicians & Surgs., Inc. v. Tex. Med. Bd.*, No. 5:07CV191, 2008 WL 2944671, at *1 (E.D. Tex. July 25, 2008). The Court finds – and Ford does not dispute – that Versata has a sufficient interest to confer standing here based on the documents that may be responsive to the Subpoena.

II.   <u>Motion for protective order</u>

As amended effective December 1, 2015, Federal Rule of Civil Procedure 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking

discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." FED. R. CIV. P. 26(c)(1).

Further, for essentially the reasons the Court has previously explained, the Court concludes that the amendments to Rule 26 do not alter the burdens discussed above. *See Celanese Corp. v. Clariant Corp.*, No. 3:14-cv-4165-M, 2016 WL 1074573, at *3 (N.D. Tex. Mar. 18, 2016); *Longoria v. Cty. of Dallas*, No. 3:14-cv-3111-L, 2016 WL 728559, at *3 (N.D. Tex. Feb. 24, 2016).

"[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). And the United States Court of Appeals for the Fifth Circuit recently explained that "[t]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule. Under the balancing standard, the district judge must

-14-

compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. Courts also weigh relevant public interests in this analysis." *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016) (footnotes and internal quotation marks omitted); *see also id.* at 564 ("Rule 26(d) gives [the] court wide discretion to craft flexible and nuanced terms of discovery." (footnote omitted)).

The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

Federal Rule of Civil Procedure 26(c)(3) provides that, in connection with a motion under Rule 26(c) for a protective order, Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses." FED. R. CIV. P. 26(c)(3).

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

FED. R. CIV. P. 37(a)(5)(A).

Federal Rule of Civil Procedure 37(a)(5)(B)-(C) further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C).

## Discussion

### I.  <u>Relevance</u>

Versata contends that "Ford cannot make any showing of relevance with respect to its requests for materials from the [Sun Litigation]" and that "[t]here are simply no common issues between the [Sun Litigation] and the Michigan case," "[n]one of the asserted patents, trade secrets, or copyrights overlap," and "[t]he accused software programs – Ford's PDO software and Sun's W5C software – are completely different," where "Sun was a computer company that has now merged into Oracle Corporation" and "is not related to Ford, was never involved in the automotive industry, has never practiced automotive configuration, and has no relationship to Versata's ACM software or Ford's accused PDO software." Dkt. No. 1 at 5.

Versata further argues that "Ford's position would authorize both Ford and Versata to conduct discovery into each other's unrelated litigation activities regardless of relevance," where "[t]he Michigan case is already highly complex and multi-faceted," "[b]oth parties have plenty of work to do under the Court's scheduling order and trial setting," and, "[i]f the parties were allowed to subpoena materials from unrelated litigations, the scope of the litigation would expand to the point where the parties would be unable to focus on the matter at hand." *Id.* at 6.

And Versata argues that "[t]he only justification Ford has ever offered for seeking materials related to the [Sun Litigation] is that the [Sun Litigation] included issues related to a Versata software product called SalesBuilder" but that "SalesBuilder is not at issue in the Michigan case," where " Ford never used SalesBuilder, Ford has not cited SalesBuilder in its invalidity contentions, and Ford has not referenced SalesBuilder in discovery responses" and where, "[a]lthough Ford filed an inequitable conduct claim based on SalesBuilder, the Court dismissed that claim earlier this month." Dkt No. 1 at 7. According to Versata, "[d]uring the hearing on Versata's motion to dismiss Ford's inequitable conduct claim, the Court specifically cautioned that Ford may not conduct discovery in order to plead a new claim based on SalesBuilder." *Id.* (emphasis removed).

Finally, in a footnote, Versata asserts that Ford has not "demonstrated the requisite diligence in seeking the information from McKool Smith" because Versata apparently contends that Ford could have subpoenaed the documents "at a much earlier date." *Id.* at 7 n.2.

Ford responds that McKool Smith has confirmed that it possesses responsive documents and that Sun has confirmed that it does not object to the production of those documents and, further, that the documents that the Subpoena seeks are relevant to the Michigan case for multiple reasons. Specifically, Ford explains that the Subpoena "seeks the following categories of documents from the Sun Litigation: (1) Versata's document production, (2) Versata's expert reports, and (3) deposition transcripts of Versata witnesses"; that "McKool Smith indicated that it possesses documents in categories (2) and (3)"; and that "Versata's expert reports and witness testimony in the Sun Litigation are relevant to several material issues in the [Michigan case], including: invalidity (and inequitable conduct), trade secrets, damages, and the historical business relationship between Ford and Versata." Dkt. No. 9 at 3.

Ford further explains:

With respect to invalidity and inequitable conduct, Ford contends that at least one Versata patent asserted against Ford is invalid and unenforceable in view of Versata's prior art "SalesBuilder" software sold for several years before Versata filed its patent application. Ford recently filed an amended complaint explaining in great detail how this patent should not have issued in view of Versata's prior art SalesBuilder software – software that Versata did not tell the U.S. Patent & Trademark Office about during examination. (Ex. 5, Appx. at 172-185.) The trial testimony in the Sun Litigation indicates that SalesBuilder was a focus of that litigation – a case which also involved alleged trade secrets and patent infringement. (Ex. 7, Appx. at 212.) In the Sun Litigation, SalesBuilder was described as Versata's "flagship" software, and several witnesses testified about Salesbuilder in detail. (Ex. 7, Appx. at 210.)

Yet, in the [Michigan case], Versata has not produced any documents pertaining to its SalesBuilder software. The expert reports and transcripts in McKool Smith's possession, however, clearly pertain to SalesBuilder.

In the [Michigan case], Versata recently argued – unsuccessfully – that Ford should not be permitted to take discovery of Versata's

> SalesBuilder software because it is "irrelevant" and because Versata had moved to dismiss Ford's inequitable conduct counterclaim. The Special Master appointed to manage discovery issues in the [Michigan case] rejected Versata's contention that Ford's discovery of SalesBuilder is "off limits." On the contrary, the Special Master found Ford's discovery to be relevant on multiple grounds....

*Id.* at 4 (emphasis removed; footnoted omitted).

Ford further contends that "[t]he discovery Ford seeks from the Sun Litigation is also relevant to damages," where "[t]he Sun Litigation, much like the [Michigan case], involved a Versata software licensee (Sun) who ultimately elected to replace the Versata-licensed software" and where, "like the [Michigan case], Versata asserted that its ex-licensee committed patent infringement and misappropriation of trade secrets. The trial transcript in the Sun Litigation indicates that Versata's damages claim for patent infringement and trade secret misappropriation was based largely on Versata's historical licensing fees with Sun." *Id.* at 5. According to Ford, "[d]espite having a 10-year licensing history with Ford at a fixed annual license fee, however, Versata seeks damages over 100 times that annual fee in the [Michigan case]. Versata's damages expert report in the Sun Litigation is therefore relevant as it (i) supports Ford's theory that damages should be based on the relevant historical license fee, and (ii) undermines Versata's '100X' windfall damages theory in the [Michigan case]." *Id.* (emphasis removed).

And Ford contends that the discovery that it "seeks from the Sun Litigation is also relevant to the business relationship between Ford and Versata":

> As Ford explained in its complaint, Versata requested that Ford increase the annual fees Ford was paying Versata to use the software at issue.

(Ex. 5, Appx. at 157, ¶53.) Ford alleges that during one negotiation, a Versata sales representative stated "we could have extorted a lot more money out of you three years ago." (Ex. 5, Appx. at 153, ¶34.) Versata disputes that allegation. During the Sun Litigation, however, Versata's CEO Mr. Joseph Liemandt testified regarding a Versata Board of Directors meeting memo which stated:

> Customers believe [Versata] is practicing extortion, but they can't replace us, although they'll keep trying, and then they give you SUN and IBM, right?

(Ex. 7, Appx. at 208.) Ford was a Versata "customer" at the time this memo was created. This internal memo supports Ford's allegation in the complaint, but Versata apparently destroyed it following the Sun Litigation.

Another internal Versata document raised in the Sun Litigation (but since destroyed by Versata) states:

> Customers perceive [Versata] as expensive and inflexible with a poor history of delivering on promises.

(Id. at 63.) This document, like the previous document, supports Ford's allegations in the case, and provides some explanation for Ford's decision to stop working with Versata.

It is likely that the deposition transcripts will address these internal Versata documents, and others, that support Ford's claims and allegations in the [Michigan case].

*Id.* at 5-6.

And Ford contends that "Versata witnesses, who were deposed during the [Sun Litigation], are directly relevant to the Michigan case." *Id.* at 6. "For instance, John Lynch and David Franke testified to being the 'inventors' of the Versata 'Salesbuilder' software. Their testimony is relevant to Ford's claims of: (1) inequitable conduct by Versata in prosecuting several of the patents-in-suit; (2) invalidity of several of the asserted patents; and (3) no misappropriation of Versata's trade secrets by Ford." *Id.* Ford further explains that, "[i]n addition, Versata witnesses Neeraj Gupta and Ajay Agarwal testified during the Sun Case and have been identified by Versata as witnesses in the Michigan case," and, "[a]s identified in Versata's disclosure, Messrs.

Gupta and Agarwal are the inventors of several patents being asserted against Ford in the [Michigan case]." *Id.*

Ford contends that "[t]hese are but a few examples of the grounds on which the discovery sought from McKool Smith is relevant to the" Michigan case and "that genuine disputes over relevance in this Court should be resolved in Ford's favor." *Id.* at 6 (citing *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987)). According to Ford, the United States Court of Appeals for the Federal Circuit held in *Truswal* that a determination of relevance implicates the substantive law of patent validity and is thus governed by Federal Circuit law. *See id.* at 7 n.5.

And, Ford argues, there is no other means for Ford to acquire the documents:

> Ford is not engaging in some "fishing expedition" into unrelated and irrelevant prior litigation. Ford has instead sought discovery from a single prior litigation where the facts, witnesses and evidence is relevant to Ford's claims and defenses in the Michigan Litigation. In addition, Versata never demonstrates why or how the allegedly "irrelevant" discovery would be burdensome for McKool Smith to produce. On the contrary, Ford counsel has spoken with Michael Fritz and agreed to work with him on ensuring that production can be done in a way that does not unreasonably burden McKool Smith. (Rondini Decl., Appx. at 235, ¶15.)
>
> Versata's counsel in the [Michigan case] told Ford that neither it, nor Versata, possessed any documents relating to the Sun Litigation. Based on Versata's representation, Ford had no recourse other than to subpoena McKool Smith, Versata's former counsel during the Sun Litigation.

*Id.* at 7 (footnote omitted). And, "[i]f Versata does possess the discovery sought, it would be required to produce it pursuant to Special Master Graham's February 6th order." *Id.* at 7 n.6.

Finally, to the extent that Versata contends that the Subpoena subjects McKool

Smith to an undue burden under Rule 45(c)(3)(iv), Ford contends that Versata has not

made an adequate showing under the six *Wiwa* factors:

> With respect to Factor (1), Ford has identified multiple claims, defenses
> and fact issues that the discovery sought is relevant to. With respect to
> Factor (2), Versata has indicated that it does not possess the requested
> documents, and McKool Smith has indicated that it does. Thus, the
> subpoena is the only vehicle for Ford to secure the discovery at issue.
> With respect to Factors (3), (4) and (5), Ford has requested specific
> documents from the Sun Litigation that McKool Smith has in its
> possession: expert reports and deposition transcripts. With respect to
> Factor (6), little if any burden will be imposed on McKool Smith. The
> materials presumably exist electronically and producing them should be
> relatively easy. In addition, because Sun has indicated that it is not
> opposed to producing the requested materials subject to the Protective
> Order in the [Michigan case], (*see*, Ex. 4, Appx. at 30-146), McKool Smith
> does not have to redact any included Sun information in advance of the
> production. As indicated above, however, Ford is willing to cooperate with
> McKool Smith to minimize any burden.

*Id.* at 8.

Ford contends that the Court should deny Versata's MPO and permit McKool

Smith to produce all responsive documents.

Versata replies that it has already produced SalesBuilder documents to Ford

and that nothing else from the Sun Litigation is relevant to Versata's dispute with

Ford, where documents from the Sun Litigation are irrelevant to Ford's damages

arguments and where documents from the Sun Litigation about other customers are

in no way relevant to Ford's relationship with Versata. According to Versata,

> Ford's primary basis of relevance as to the subpoenaed documents is that
> some of these documents may relate to SalesBuilder – an early Versata
> product that Ford just this month asserted as prior art and as a basis for
> inequitable conduct against one family of patents in the Michigan case.
> Setting aside the fact that SalesBuilder is an entirely different software,
> that was developed, patented and sold many years before the patents and

trade secrets asserted in the Michigan case, Ford now has what it needs with respect to that software. As Ford itself points out in its response (Opp. at 4), after Versata filed its motion to quash with this Court, the Special Master in the Michigan case ordered Versata to produce all SalesBuilder documents to Ford and to respond to Ford's related interrogatories. *See* Opp., Ex. 9. Versata has complied with the Special Master's ruling, providing Ford with interrogatory responses and producing over 800 documents. This production occurred after Ford filed its response in this Court. *See* Ex. A (2/24/17 Email from Versata's counsel to Ford's counsel). Ford's argument that it needs additional SalesBuilder documents from the [Sun Litigation] is therefore now without merit.

Importantly, and as Ford concedes, McKool Smith did not retain the trial exhibits or Versata's document production from the [Sun Litigation], i.e., any SalesBuilder documents produced in that case. Opp. at 2. McKool Smith only possesses expert reports and Versata witness deposition transcripts from that case. *Id.* It is questionable that either of these categories of documents contain materials relevant to Ford's invalidity contentions. Contrary to Ford's claim, it is unlikely that these expert reports pertain to Versata's own SalesBuilder software, but rather to Sun's accused W5C software and its infringement of Versata's patents. Moreover, any Versata trade secret information that may be contained in these documents would be irrelevant to Ford's invalidity arguments. Ford's invalidity grounds for seeking any and all documents that McKool Smith may possess from the [Sun Litigation] should therefore be rejected.

Dkt. No. 18 at 2-4 (footnote omitted; emphasis removed).

And, Versata contends,

Ford's other basis for relevance of Sun documents – to prove Ford's damages positions – is also meritless. There are simply no common issues between the [Sun Litigation] and this action. None of the patents, trade secrets, or copyrights overlap. The accused software programs – Ford's PDO software for automotive configuration and Sun's W5C software for computer systems – are completely different. Sun was a computer company that had nothing to do with the automotive industry, has never practiced automotive configuration, and has no relationship to Ford's accused PDO software. The damages expert reports from the [Sun Litigation] pertain to the issues at dispute in that case, as do the deposition transcripts. There is nothing from the [Sun Litigation] that can be relevant to Ford's damage's case. Ford's argument that positions taken by a different damages expert almost a decade ago on damages

-23-

calculations for infringement of entirely different patents and trade secrets under reasonably different damages law would somehow be relevant to Ford's damages case in Michigan today is indeed farfetched.

....

Likewise, Ford does not need documents from Sun to make a case about its business relationship with Versata. There are thousands of documents already produced in the Michigan case that detail their relationship over fifteen years – Versata alone has produced about 850,000 pages of documents. It is improbable that testimony from the [Sun Litigation] about documents relating Versata's relationship with Sun and dating back twelve years before Ford's dispute with Versata would in any way be relevant to the Michigan case. See Opp. at 6-7; Ex. 7, at 208-09. After all, Ford continued its business relationship with Versata for more than decade after those documents were created. More importantly, those documents discuss Versata's relationship with customers other than Ford back in 2002. *Id.* Ford is not entitled to go on a fishing expedition into Versata's litigation history to find tidbits in unrelated documents from unrelated cases. *See Mayes v. City of Oak Park*, 2007 WL 187941, at *2 (E.D. Mich. Jan. 22, 2007) (granting defendants a protective order against plaintiff's non-party subpoena directed at documents that were not relevant to the claims or defenses asserted in Plaintiff's complaint). Moreover, from its brief, it is evident that Ford already has access to publicly available information from the [Sun Litigation] in form of trial transcripts and exhibits to the various filings in that case. Ford's sole goal in seeking additional documents is simply to muddle the issues in the case and create a sideshow on unrelated issues from more than a decade ago. With deposition transcripts from the [Sun Litigation], Ford intends to harass Versata witnesses in the Michigan case about statements they may have made – on entirely unrelated topics – in their Sun depositions. Allowing this discovery will only lead to further discovery disputes and detract from work that parties already have to do in a case that is highly complex and multi-faceted.

*Id.* at 4, 5-6 (emphasis removed).

Versata further replies that this Court is not required to resolve disputes over relevance in Ford's favor. Versata contends that, "in a later case, the Federal Circuit explained that *Truswal* does not preclude relevance consideration by an ancillary court 'where there are serious relevancy questions that have not been given meaningful

consideration in the main litigation.'" *Id.* at 6 (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990)). According to Versata, "[s]uch is the case here" where, "[a]side from the SalesBuilder documents – which Versata has already produced – none of the [Sun Litigation] documents that Ford requests from this Court have been ruled relevant in any way by the Michigan court." *Id.*

The Court has considered whether the Motion to Modify presents "exceptional circumstances" that warrant a transfer to the Eastern District of Michigan under Federal Rule of Civil Procedure 45(f), but, consistent with counsels' stated views on this question at oral argument, the Court determines that this matter does not warrant a Rule 45(f) exceptional-circumstances transfer.

Further, the Court determines that it can appropriately address the relevance arguments raised by Versata consistent with the governing precedent.

As Ford explained in its response and at oral argument, orders in the Michigan case have determined that materials regarding Versata's SalesBuilder software are relevant to claims or defenses in the Michigan case. The Court determines that Versata has not met its burden to show that the Subpoena should be quashed or a protective order entered to preclude discovery of materials that reference SalesBuilder.

Likewise, the Court determines that Versata has not met its burden to show that materials from the Sun Litigation that reference or discuss the Versata Board of Directors meeting memo and other Versata internal document specifically discussed in Ford's response to the Motion to Modify are not relevant to claims or defenses in the Michigan case. In its response and at oral argument, Ford has persuasively explained

those materials' relevance and likelihood of being included in Versata witnesses' deposition transcripts and deposition exhibits from the Sun Litigation.

And the Court determines that the requested materials from the Sun Litigation that explain or discuss the theory or method of calculation for Versata's damages claim for patent infringement and trade secret misappropriation in that matter are relevant as to Versata's damages claims in the Michigan case.

But the Court finds that Versata has persuasively asserted that every Versta expert report and every page of every Versata witness's deposition transcript from the Sun Litigation is not likely to include materials relevant to claims or defenses in the Michigan case, and Ford has not shown otherwise. Whatever force *Truswal* and other decisions exert on this determination, they do not go so far as to simply taking the subpoenaing party's bare word for it that it really needs everything it is asking for. The Court further determines that every page of deposition testimony by Versata witnesses in the Sun Litigation who are also disclosed as or may be witnesses in the Michigan case is not, based on that overlap alone, relevant to a claim or defense in the Michigan case.

Accordingly, the Court MODIFIES the Subpoena to (A) limit its documents requests to portions of the Versata expert reports produced in the Sun Litigation and portions of the deposition testimony, including associated exhibits, of Versata witnesses given during the Sun Litigation that (1) reference or discuss Versata's SalesBuilder software; (2) reference or discuss the Versata Board of Directors meeting memo and other Versata internal document specifically discussed in Ford's response

to the Motion to Modify, *see* Dkt. No. 9 at 5-6; or (3) explain or discuss the theory or method of calculation for Versata's damages claim for patent infringement and trade secret misappropriation in the Sun Litigation and to (B) require the redaction or exclusion of any Sun Microsystems confidential information that may be included within those specified portions of the Versata expert reports produced in the Sun Litigation and portions of the deposition testimony, including associated exhibits, of Versata witnesses given during the Sun Litigation.

At oral argument, McKool Smith's counsel and Versata's counsel agreed that any modification or limiting of the Versata expert reports and Versata witness deposition testimony that the Court orders will be undertaken by Versata, not McKool Smith, and the Court accepts and adopts that agreed arrangement. To clarify, then – as a practical matter, to comply with the Subpoena as modified, McKool Smith must only produce to Versata all Versata expert reports produced in the Sun Litigation and in McKool Smith's possession, custody, or control and all deposition testimony, including associated exhibits, of Versata witnesses given during the Sun Litigation and in McKool Smith's possession, custody, or control.

## II.   Trade secrets

Versata contends that the Subpoena "to McKool Smith also threatens Versata's confidential information from the [Sun Litigation]"; that "Ford has no legitimate interest in discovering confidential information about unrelated Versata software and business activities"; that, "[a]lthough the Court in the Michigan case has entered a protective order, that is not a license to conduct irrelevant discovery into irrelevant

trade secrets and unrelated business activities"; and that, "[e]ven with a protective order in place, that would unnecessarily risk compromising Versata's trade secrets with no corresponding benefit to this case." Dkt. No. 1 at 9.

Ford responds that compliance with the Subpoena does not jeopardize Versata's confidential information or trade secrets. According to Ford, "[b]ecause that information is relevant in both cases, however, the assertion that it is confidential is not a basis for withholding discovery," where the Subpoena "instructed McKool Smith that all production should be designated as 'Confidential' or 'Confidential-Attorneys' Eyes Only' pursuant to the Michigan protective order already in place between the parties" and where "[a]ny Versata documents produced by McKool Smith will have the same protection and therefore will not result in any unnecessary risk or compromise to Versata." Dkt. No. 9 at 9.

Versata replies that the Subpoena does put unrelated Versata trade secrets at risk and that McKool Smith has objected to the production of Versata's trade secret information. According to Versata, "Ford fails to meaningfully address the fact that its subpoena to McKool Smith threatens Versata's confidential information from the [Sun Litigation], including confidential information about unrelated Versata proprietary software and business activities," and "Ford's citation to the protective order (Opp. at 9) provides no assurance of confidentiality – it is unclear how the protective order treats documents produced by a third party which contain Versata's confidential information." Dkt. No. 18 at 8 (emphasis removed). "Moreover, the fact that Versata's confidential information is at issue cautions against discovery through a third party

subpoena." *Id.*

And, Versata reports, "[c]ontrary to Ford's assertion, McKool Smith did in fact object to Ford's requests both with regard to the burden being imposed and on the basis that it would be required to disclose its former client's confidential information in contravention of Rule 1.05 of the Texas Disciplinary Rules of Professional Conduct as well as the Texas court's protective order," where "Rule 1.05 mandates that McKool Smith cannot reveal Versata's confidential information without Versata's consent." *Id.* at 8-9. Versata contends that "McKool Smith's objections provide an additional basis for this Court to quash Ford's subpoena." *Id.* at 9.

The Court determines that, based on the modifications explained above limiting the scope of materials responsive to the Subpoena, Versata has not shown a danger of disclosing a Versata trade secret or other confidential research, development, or commercial information that is unrelated to matters at issue in the Michigan case or that cannot be adequately addressed by production subject to the Stipulated Amended Protective Order entered in the Michigan case [Dkt. No. 2 at 9-32 of 114]. As Ford notes, its Subpoena instructs that, "[w]hen providing documents in response to this subpoena, [McKool Smith] may designate such documents or information 'Confidential' or 'Confidential – Attorneys' Eyes Only' pursuant to" that protective order. Dkt. No. 9 at 6 of 114. And the Subpoena instructs that, "[t]o the extent that the Versata expert reports include Sun Microsystems confidential information, such confidential information should be redacted." *Id.*

The Court denies Versata's request to quash or further modify the Subpoena

under Rule 45(d)(3)(B)(1).

III.   <u>Alleged violation of protective order in the Sun Litigation</u>

According to Versata, "[a]lthough Ford's subpoena to McKool Smith can and should be quashed on relevance grounds, Ford's subpoena is objectionable for additional reasons." Dkt. No. 1 at 8. Versata asserts that the Subpoena "would require McKool Smith to produce confidential information that belongs to Sun Microsystems," which "information is under a protective order entered by the United States District Court for the Eastern District of Texas in the [Sun Litigation]" and "that is still in effect and is binding on McKool Smith and Versata." *Id.*

Ford responds that, "[a]fter speaking with Mr. Fritz at McKool Smith, Ford contacted Oracle attorney Deborah Miller to determine whether Oracle had any objection to McKool Smith producing the responsive documents in its possession, such as expert reports" (where "Oracle USA, Inc. acquired, and is now the successor of, Sun Microsystems"); that "Ms. Miller confirmed that Oracle did not object to McKool Smith's production of the requested documents so long as they were produced subject to the Protective Order entered in the Michigan case"; and that "Ms. Miller's confirmation repudiated Versata's contention that McKool Smith will have to incur burden or expense in 'negotiating with Sun over what must be redacted.'" Dkt. No. 9 at 3 & n.3 (footnote omitted).

The Court raised additional concerns regarding the Sun Litigation's protective order at oral argument, and Ford filed a notice of supplemental authority following the argument. *See* Dkt. No. 26 (attaching a copy of *Mugworld, Inc. v. G.G. Marck &*

*Assocs., Inc.*, No. 405CV441, 2007 WL 2229568 (E.D. Tex. June 15, 2007)).

As the Court noted at oral argument, the Sun Litigation's protective order has not been filed in this matter, but the Court was able to access – and takes judicial notice of – it from the Eastern District of Texas docket for the Sun Litigation. That Protective Order Governing Discovery of Confidential and Proprietary Information ("Sun Litigation Protective Order") provides, in relevant part:

> The Court issues this Protective Order to facilitate document disclosure and other discovery under the Local Rules of this Court and the Federal Rules of Civil Procedure.
> In support of this Order, the Court finds that:
> (1)    Documents or information containing confidential proprietary and business information and/or trade secrets ("Protected Material") that bear on the parties' claims or defenses are likely to be disclosed or produced during the course of discovery in this litigation;
> (2)    The parties to this litigation assert that dissemination and disclosure of Protected Material to the public or persons not authorized by the agreed terms of this Protective Order could severely injure or damage the party disclosing or producing the Protected Material and could place that party at a competitive disadvantage; and
> (3)    To protect the respective interests of the parties and to facilitate the progress of disclosure and discovery in this case, the following Order should issue.
> **IT IS THEREFORE ORDERED THAT:**
> 1.    **Application Of Protective Order.** This Protective Order shall govern all Protected Material, defined as information, testimony, things, and documents filed with the Court or produced or otherwise provided (either by a party or by a non-party) as part of discovery in this action, including documents and things, portions of documents, answers to interrogatories, responses to requests for admissions of fact, depositions, transcripts of depositions, exhibits to depositions and hearings, portions of briefs, memoranda and writings filed with or otherwise supplied to the Court, and technical and commercial information derived therefrom deemed by any entity producing that information to be confidential information. This Protective Order permits the parties and non-parties producing or providing Protected Material to designate such Protected Material as "HIGHLY CONFIDENTIAL –ATTORNEYS' EYES ONLY"or "HIGHLY CONFIDENTIAL –SOURCE

CODE."

      The provisions of this Protective Order with respect to Protected Material shall not apply  to information that (a) was, is, or becomes public knowledge without fault of the receiving party and not in violation of this Protective Order; (b) is lawfully acquired in good faith from a third party not subject to this Protective Order, such third party being lawfully in possession of it and under no obligation of confidentiality to the producing party; (c) was lawfully possessed by the receiving party prior to first receipt of the material from the producing party, provided such information was not received directly, or indirectly, from the producing party; (d) is discovered independently by the receiving party by means that do not constitute a violation of this Protective Order; or (e) was submitted to any governmental entity without request for confidential treatment.

....

      **2.**    **Designating And Marking Protected Material.** The producing party shall mark the copies of such Protected Material as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE"prior to producing the copies to the opposing party. "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material may also be designated with alternative legends, including "CONFIDENTIAL," "HIGHLYCONFIDENTIAL," "ATTORNEYS' EYES ONLY,"or any other similar designation sufficient to provide notice of the confidential nature of such material (including, for documents produced in electronic form, an appropriate abbreviation such as "CONF" or "HC-AEO"), which shall have the same effect as designating such material as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." "HIGHLY CONFIDENTIAL – SOURCE CODE" material may also be designated with alternative legends, including "HIGHLY CONFIDENTIAL – RESTRICTED SOURCE CODE" or any other similar designation sufficient to provide notice of the confidential nature of such material (including, for documents produced in electronic form, an appropriate abbreviation such as "HC-SC"), which shall have the same effect as designating such material as "HIGHLY CONFIDENTIAL – SOURCE CODE."If a document has more than one designation, the higher or more restrictive confidential designation applies. To the extent the parties produce documents that were first produced in other litigations and labeled "Confidential"or "Highly Confidential" or designated with any other confidentiality restrictions, such documents will be treated as if they had been designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the terms of this Protective Order, unless and until the parties reach a

different agreement regarding such documents and/or the Court rules otherwise. This Protective Order shall not in any other way change a party's obligations under any other agreement or protective order.

....

(f)   **Depositions and Hearings ("Proceedings").** Deposition and hearing transcripts and associated exhibits shall be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material until fourteen (14) calendar days after receipt of the transcript by counsel for the witness, after which the information revealed during the proceeding shall cease to be treated as Protected Material unless, at the proceeding and on the record, or in writing before the fourteen (14) days have expired, the witness, his or her employer or counsel otherwise designates the transcript, exhibits, and/or portions thereof.

....

4.   **Treatment Of Protected Material**. Protected Material and any information contained therein shall be used solely for the purposes of this litigation, and shall not be used or shown, disseminated, copied,[1] or in any way communicated to anyone for any purpose whatsoever, except as provided for herein.

5.   **Limitations On Use And Disclosure Of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Material:** .... Protected Material designated as "HIGHLY CONFIDENTIAL –ATTORNEYS' EYES ONLY" and any information contained therein shall be used solely for the prosecution of this litigation (including any appeal).

....

8.   **Improper Disclosure of Protected Material.** If any Protected Material is disclosed to any person other than in a manner authorized by this Protective Order, the party responsible for the disclosure or knowledgeable of such disclosure, upon discovery of the disclosure, shall immediately inform the Designating Party of all facts pertinent to the disclosure that, after due diligence and prompt investigation, are known to the party responsible for the disclosure or knowledgeable of the disclosure (including the name, address, and employer of the person to whom the disclosure was made), and shall immediately make all reasonable efforts to retrieve any Protected Material disclosed to such unauthorized person and prevent further disclosure by each unauthorized person who received such information.

---

[1]   "The term 'copied' as used herein refers to the making of any photographic, mechanical, or computerized copy or reproduction of any document or thing, or any verbatim transcript, in whole or in part, of such document or thing."

....

15. **Termination Of Litigation.** After termination of this litigation, the provisions of this Order shall continue to be binding, except with respect to those documents and information that become a matter of public record.

(a) **Jurisdiction.** This Court retains and shall have continuing jurisdiction over the parties and recipients of the Protected material for enforcement of the provisions of this Order following termination of this litigation.

(b) **Destruction of Protected Material.** Within forty-five (45) calendar days after termination of this action by non-appealable dismissal, judgment, or settlement, counsel for the party or parties receiving Protected Material shall destroy or return all Protected Material received, and notify the Designating Party of any such destruction.

(c) **Retention of Protected Material.** Counsel for the party or parties receiving Protected Material may retain a copy of any pleading, transcript (e.g. deposition, hearing, or trial), or exhibit thereto, regardless of its confidentiality designation. The party or parties receiving the Protected Material shall be entitled to keep their attorney work product that refers or relates to any Protected Material. Attorney work product may be used in subsequent litigation provided that such use does not disclose Protected Material or any information contained therein.

....

17. **Use Of Protected Material By The Designating Party:** Nothing in this Protective Order shall be construed as a limitation on a party's ability to show materials that the party has designated as Protected Material to whomever the Designating Party may deem appropriate, nor will it be construed as a limitation on a party's ability to show materials designated by another party as Protected Material to that Designating Party, including any present employee thereof.

18. **Order is Binding.** This Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, and other persons or organizations over which they have control. The provisions of this Order are considered binding until entered by the Court.

19. **Jurisdiction.** Any person receiving Protected Material under the terms of this Protective Order hereby agrees to subject himself or herself to the jurisdiction of this Court for purposes of any proceedings relating to the performance under, compliance with, or violation of this

-34-

Protective Order.

20. **<u>Use of the Protective Order.</u>** This Protective Order is for the sole purpose of facilitating discovery in the above-styled and numbered cause, and the Protected Material obtained under this Order's protection may only be used for this case. ....

21. **<u>Modification of Order.</u>** Each party reserves the right to move the Court to modify the terms of this Protective Order in the event that the party believes that it is necessary. In the event such an application is made, all persons described herein shall be bound by the terms of this Protective Order unless and until it is modified by the Court.

22. **<u>Effective Date of Order.</u>** This Protective Order shall be effective immediately upon entry by the Court and, unless modified pursuant to the terms contained in this Order, shall survive the conclusion of this litigation.

*Versata Software, Inc. v. Sun Microsystems, Inc.*, No. 2:06-cv-358-TJW, Dkt. No. 61 (E.D. Tex. Apr. 15, 2008).

As modified, the Subpoena's document requests now exclude any Sun Microsystems confidential information. But McKool Smith, as Versata's counsel in the Sun Litigation, is subject to the Sun Litigation Protective Order, which remains in effect even after the Sun Litigation's termination and under which the United States District Court for the Eastern District of Texas retains and has continuing jurisdiction over Versata, Sun, and McKool Smith for enforcement of the provisions of the order.

Even with Sun's consent (or stated lack of opposition), the Sun Litigation Protective Order, by its terms, prohibits McKool Smith from disclosing Protected Information subject to that order to Ford for purposes of the Michigan case. Modification or termination of the Sun Litigation Protective Order appears to be necessary for that to occur. Ford cites the Court to a decision by a judge in the Eastern District of Texas that notes that "courts may vacate protective orders issued by another

court where the case has been closed or otherwise dismissed" but that, "when the other matter is ongoing, courts have held that any request necessitating the modification of the protective order be directed to the issuing court." *Mugworld*, 2007 WL 2229568, at *1 (citing *Holland v. Summit Tech., Inc.*, No. Civ. A. 00-2313, 2001 WL 1132030, at *4 (E.D. La. Sept. 21, 2001); *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 501 (D. Md. 2000); *Dushkin Publ'g Group, Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335-36 (D.D.C. 1991); *LeBlanc v. Broyhill*, 123 F.R.D. 527, 530 (W.D.N.C. 1988)).

But, more generally, "[c]ourts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity [and] courtesy," *Tucker*, 191 F.R.D. at 499, and "it is well-settled that '[t]he need for comity is not to be downplayed,'" *Mugworld*, 2007 WL 2229568, at *1 (quoting *Holland*, 2001 WL 1132030, at *4).

The Sun Litigation Protective Order clearly states its continuing effect after termination and its near-absolute prohibition on disclosing or using Protected Material outside of the Sun Litigation. This Court will not take the extraordinary step of modifying or terminating this order of the United States District Court for the Eastern District of Texas – at least not until there has been an effort to file a motion with that court to modify or terminate its order. And the Court will not order McKool Smith to undertake any efforts in connection with such a motion, nor will the Court endeavor to predict how the Eastern District of Texas will receive such a request or whether Ford will be able to establish standing. *See generally Deus v. Allstate Ins. Co.*, 15 F.3d

-36-

506, 525-26 (5th Cir. 1994).

But the Sun Litigation Protective Order's terms do include one exception in Paragraph 17: "Nothing in this Protective Order shall be construed as a limitation on [Versata's] ability to show materials that [Versata] has designated as Protected Material to whomever the [Versata] may deem appropriate." And the Court notes that, here, Ford seeks expert reports produced by Versata and deposition transcripts of Versata witnesses from the Sun Litigation for use against Versata in the Michigan case. *See generally Tucker*, 191 F.R.D. at 500-01. The Subpoena does not seek the materials directly from Versata, where – whatever argument could be made that these materials are within Versata's control under Federal Rule of Civil Procedure 34(a)(1) – Versata and its counsel in the Michigan case do not possess copies of them. But the Sun Litigation Protective Order – or, for that matter, Texas Disciplinary Rule of Professional Conduct 1.05 – does not prohibit McKool Smith from providing these materials to its former client Versata, which remains subject to Sun Litigation Protective Order. (The same perhaps may not be said for providing the materials to Versata's counsel in the Michigan case.)

As other courts have noted in related circumstances, this situation calls out for a practical solution. *See id.* at 500. The best that this Court can come up with is this: The Court further MODIFIES the Subpoena to require McKool Smith to, under Federal Rule of Civil Procedure 45(a)(1)(A)(iii), produce the responsive materials – all Versata expert reports produced in the Sun Litigation and in McKool Smith's possession, custody, or control and all deposition testimony, including associated

exhibits, of Versata witnesses given during the Sun Litigation and in McKool Smith's possession, custody, or control – to Versata by **March 23, 2017**, at which point McKool Smith's obligations under the Subpoena (as modified) will be satisfied.

What, if anything, happens after that production is for the parties to address in the United States District Court for the Eastern District of Michigan and possibly the United States District Court for the Eastern District of Texas.

IV.   <u>Versata's motion for a protective order</u>

Ford finally contends that Versata is not entitled to a Rule 26(c)(1) protective order where Versata does not explain why this Court should grant a protective order. "For example, Versata does not assert any of the reasons for a protective order authorized under Fed. R. Civ. P. 26," and, "[a]s the party seeking such an order, Versata bears the burden to show the necessity of the protective order and support its position with a particular and specific demonstration of fact, as distinguished from boilerplate and conclusory statements." Dkt. No. 9 at 9, 10. Ford argues that "Versata does not claim that any of Ford's requests would cause it to suffer annoyance, embarrassment, oppression, or undue burden or expense; nor could Versata make such a claim as the subpoena is directed to non-party McKool Smith" and that "the primary ground for Versata's motion is that the discovery sought is not relevant" but that "[t]his argument, standing alone, is insufficient to support a motion for protective order under Fed. R. Civ. P. 26." *Id.* at 10. Ford asserts that "Versata has therefore not articulated any injury, let alone set forth specific facts showing a clearly defined and serious injury as required by law." *Id.*

The Court agrees that Versata has not shown the need for a Rule 26(c)(1) protective order in this miscellaneous matter as to the Subpoena as now modified as explained above.

## V.   Award of expenses

Considering all of the circumstances here and the Court's ruling above, the parties will bear their own expenses, including attorneys' fees, in connection with Versata's Motion for Protective Order and to Quash Ford Motor Company's Subpoena to Third Party McKool Smith to Produce Documents [Dkt. No. 1].

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Versata's Motion for Protective Order and to Quash Ford Motor Company's Subpoena to Third Party McKool Smith to Produce Documents [Dkt. No. 1].

SO ORDERED.

DATED: March 8, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE